KELLY, TROTTER & FRANZEN
MICHAEL J. TROTTER (SBN 139034)
mjtrotter@kellytrotter.com
111 W. Ocean Blvd., 14th Fl.
P.O. Box 22636
Long Beach, CA 90801-5636
Phone (562) 432-5855

Attorneys for Plaintiff DONALD HALL,
individually and on behalf of the general
public and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD HALL, individually and on behalf of the general public and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HP, INC., and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 8:24-cv-2507<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>1. **Breach of Contract;**<br>2. **Fraud by Omission and Misrepresentation;**<br>3. **Violation of Cal. Bus. & Prof. Code §§ 17200, et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Donald Hall ("Plaintiff"), on behalf of himself, the general public, and all others similarly situated, alleges:

## JURISDICTION

1.     This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. section 1332 as amended by the Class Action Fairness Act of 2005 because there are 100 or more class members, the amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs, and some members of the class, including Plaintiff, are citizens of different states than the Defendant. (28 U.S.C. § 1332(d)(2)(A).)

/ / /

/ / /

## STATEMENT OF THE CASE

2.    After purchasing an HP printer, attorney Hall enrolled in HP's "Instant Ink" program whereby HP would monitor Hall's ink usage, mail him replacement ink cartridges based on his usage and debit his bank account for the cartridges provided.

3.    When attorney Hall reduced his caseload, he cancelled the Instant Ink program and upon cancellation, HP disabled Hall's printer with the following message appearing on the printer's screen:

> "The indicated cartridges [black, blue, red and yellow]
> cannot be used until the printer is enrolled in HP instant
> ink."

4.    Hall contacted HP and was informed that HP would reactivate his printer but only if he agreed to re-enroll in the Instant Ink program for 30 days, after which time he could cancel. Left with no choice, Hall agreed.

5.    After agreeing to re-enroll in the Instant Ink program, Hall learned that HP had also disabled the ink cartridges Hall had paid for while his Instant Ink program was in effect.

6.    Hall seeks restitution and damages because (1) HP did not have the legal right to turn Hall's printer off for any reason, let alone to force Hall to re-enroll in a program he was entitled to cancel at any time and (2) because HP did not have the legal right to disable the ink cartridges which Hall had previously paid for in full.

## FACTUAL BACKGROUND

7.    In or about 2021, Hall purchased an HP Office Jet Pro printer 9015e at a Staples store located in the City of Cypress in the County of Orange.

8.    At the time of purchase or thereafter, Hall agreed to enroll in HP's "Instant Ink" program whereby HP would monitor Hall's ink usage, provide him with replacement cartridges on a monthly basis, and debit his bank account for the replacement cartridges.

9.    As time passed, attorney Hall was reducing his caseload and cancelled his HP Instant Ink subscription on or about November 17, 2023.

10.    Upon cancellation, Plaintiff received an email confirmation from HP dated November 17, 2023 which stated, in part:

> **"Your cancellation will be final on December 16, 2023.** Your cancellation request has been received, but your actual subscription cancellation will take place at the end of your current billing cycle.

> **"Have store-bought HP Original cartridges ready to install.** You can continue using the subscription cartridge until December 16, 2023, however it will not function in your printer once your subscription is cancelled, even if it is already in your printer.

> [¶]

> **"Return and recycle the Instant Ink cartridges"**

(Exh. 1.)

11.    On December 16, 2023, attorney Hall was in the process of printing a legal document when his HP printer stopped working and the following message appeared on his printer's screen:

> "The indicated cartridges [black, blue, red, yellow] cannot be used until the printer is enrolled in HP instant ink."

12.    Unbeknownst to attorney Hall when he purchased his HP printer at Staples, HP had installed a mechanism in his printer which enabled HP to disable his printer remotely.

13.    Unaware of the kill switch mechanism in his printer, Hall contacted HP and was informed that HP had disabled his printer because he cancelled his Instant Ink subscription and the only way Hall could reactivate his printer was to enroll in an additional 30-day Instant Ink subscription and after 30 days, he could cancel.

- 3 -

14.     Left with no alternative, Hall re-enrolled for 30 days and cancelled after the 30 days elapsed.

15.     In a December 17, 2023 email, HP confirmed the cancellation and stated, in part:

> **"Make sure you have installed HP Original Ink cartridges from your preferred retailer.** Subscription cartridges will no longer work since you have cancelled, so install store-bought HP Original cartridges to keep printing."

(Exh. 2.)

16.     On December 20, 2023, HP sent an email to Plaintiff which stated, in part:

> "Your most recent billing cycle has just ended and your invoice total has been charged to your credit card on file.
>
> "Charges for billing cycle ending on: December 17, 2023, Subscription ID: 1455104221.

| "Item | Qty. | Price |
|---|---|---|
| "HP Instant Ink Service 300 Page Plan | 1 | $11.99 |
| "Additional page sets of 10 pages | 100 | $100.00 |
| "Subtotal | | $111.99 |
| "Tax | | $10.36 |
| "Total | | $122.35" |

(Exh. 3.)

17.     However, despite the reactivation of Hall's printer, the ink cartridges Hall had received and paid for prior to cancellation were useless because, unbeknownst to Hall, each ink cartridge also included a kill switch mechanism which was activated upon cancellation of his Instant Ink subscription and the cartridges

were not reactivated even though Hall re-enrolled in the Instant Ink program for the additional 30 days.

## PARTIES

18.     Plaintiff is an individual who currently resides in the County of Orange, State of California.

19.     HP is incorporated in Delaware, headquartered in Palo Alto, California, and does business in California and nationwide.

20.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

21.     At all relevant times, each and every Defendant was acting as an agent, co-venturer, co-conspirator, partner or facilitator of the other Defendants and was acting within the course and/or scope of said relationship with the knowledge or consent of each of the Defendants.  The acts and/or omissions herein alleged were known to, or ratified by, each of the other Defendants.

## PERSONAL JURISDICTION AND VENUE

22.     This Court has personal jurisdiction over HP because HP currently does business in California and its headquarters is located in the City of Palo Alto, California.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts giving rise to the claims alleged herein occurred within this District including Plaintiff's purchase of the printer, HP's Instant Ink subscription, the cancellation of Plaintiff's subscription and HP's disablement of Plaintiff's printer and cartridges and, pursuant to 18 U.S.C. § 1965(a) because plaintiff resides in this district.

## CLASS ACTION ALLEGATIONS

- 5 -

24.     Plaintiff brings this action, on behalf of himself, the general public, and all others similarly situated, as a class action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.  The proposed Classes that Plaintiff seeks to represent are composed of and defined as:

a.     "All persons in the United States who, within the appliable statute of limitations, purchased an HP printer and enrolled in and subsequently cancelled HP's Instant Ink program and whose printers and/or ink cartridges were disabled by HP based on the cancellation including, without limitation, those subscribers who re-enrolled in the HP Instant Ink program after cancellation."

b.     "All persons in California who, within the applicable statute of limitations, purchased an HP printer and enrolled in and subsequently cancelled HP's Instant Ink program and whose printers and/or ink cartridges were disabled by HP based on the cancellation including, without limitation, those subscribers who re-enrolled in the HP Instant Ink program after cancellation."

25.     Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, assigns, individuals bound by any prior settlement, and any judgment, justice, or judicial officer presiding over this matter.

26.     This action is brought as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)-(4) and 23(b)(1)-(3).  This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements of those provisions.

27.     The Class is so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes the Class includes

thousands of members.  Plaintiff alleges that the Class may be ascertained from the records maintained by Defendants.  (Rule 23(a)(1).)

28.    Common questions of fact and law exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

a.    Was HP entitled to sell HP printers with a remote disabling device;

b.    Was HP entitled to sell HP printers with a remote disabling device without informing purchasers of the existence of the remote disabling device;

c.    As to those class members who purchased an HP printer and enrolled in HP's Instant Ink program, did HP have the legal right to disable their printer if they cancelled their Instant Ink subscription;

d.    As to those class members who purchased an HP printer and enrolled in HP's Instant Ink program, did HP have the legal right to disable their previously purchased ink cartridges if they cancelled their Instant Ink subscription;

e.    Did HP have the legal right to require class members to re-enroll in the Instant Ink program to reactivate their printer and/or cartridges; and

f.    Are class members entitled to restitution or damages for ink cartridges paid for after their printers and/or cartridges were disabled.

29.    Plaintiff's claims are typical of the claims of each class member. Plaintiff, like all other members of the class, purchased an HP printer, enrolled in

HP's Instant Ink program, thereafter cancelled his Instant Ink program and as a result of his cancellation, HP disabled his printer and/or cartridges.

30.     Plaintiff will fairly and adequately represent the interests of the class members and has retained competent counsel experienced in class action litigation. There are no conflicts between the claims of Plaintiff and the class members.

31.     A class action is superior to other methods of adjudication applicable to this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation required to address HP's conduct. Individualized litigation would also increase the delay and expense to all parties and to the court system associated with complex legal and factual issues and present a potential for inconsistent judgments. This class action also allows the assertion of claims which might otherwise go unasserted because of the expense of bringing individual lawsuits and provides a fair and efficient method of adjudication.

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (On behalf of a Nationwide Class or Alternatively a California Class)
### Count 1

32.     Plaintiff hereby incorporates paragraphs 1-31 as if set forth in full herein.

33.     A contract between HP and Plaintiff was created when HP offered to sell its HP Office Jet Pro Printer 9015e to Plaintiff and Plaintiff accepted HP's offer and paid for the printer offered for sale by HP.

34.     The contract between HP and Plaintiff did not include a contractual provision allowing HP to disable Plaintiff's printers based upon events or conditions occurring subsequent to Plaintiff's acceptance of HP's offer to sell and Plaintiff's purchase of the printer.

- 8 -

35.     When HP disabled Plaintiff's printer, HP breached its contract with Plaintiff because there was no provision in the contract permitting HP to disable Plaintiff's printer for any reason, including cancellation of Plaintiff's HP Instant Ink subscription.

36.     As a result of HP's breach of contract, Plaintiff has incurred damages, including payment of post-cancellation ink cartridge fees.

### Count 2

37.     A contract between HP and Plaintiff was created when HP offered its HP Instant Ink subscription service to Plaintiff and Plaintiff accepted HP's offer.

38.     Neither the offer by HP nor the contract between HP and Plaintiff, included a provision whereby HP could disable Plaintiff's printer if Plaintiff cancelled his Instant Ink subscription and further, post-cancellation communications from HP to Plaintiff confirmed that the HP Instant Ink subscription service could be cancelled at any time. In one post-cancellation communication, HP informed Plaintiff "Change or cancel your plan at any time online," (Exh. 1, fn. 3) and in another post-cancellation communication, HP informed Plaintiff: "Change or cancel anytime with no additional fee."

39.     HP breached the Instant Ink subscription service contract when HP disabled Plaintiff's printer after Plaintiff informed HP that Plaintiff was cancelling his Instant Ink subscription service.

40.     As a result of HP's breach of contract, Plaintiff has incurred damages including payment of post-cancellation ink cartridge fees.

### SECOND CLAIM FOR RELIEF

### Fraud by Omission and Misrepresentation

### (On behalf of Nationwide Class, or Alternatively, a California Class)

41.     Plaintiff hereby incorporates Paragraphs 1-40 as if set forth in full herein.

- 9 -

42.    HP failed to disclose to Plaintiff that his printer had a remote disabling device and that if Plaintiff cancelled his HP Instant Ink subscription, HP would disable his printer.

43.    In addition to its failure to disclose to Plaintiff that if Plaintiff cancelled his Instant Ink subscription, HP would disable his printer, HP also misrepresented to Hall and the general public that HP's Instant Ink subscription service could be cancelled at any time.

44.    At the time Hall purchased his printer and enrolled in HP's Instant Ink program, Hall was not aware of the remote disabling devices in his printer or ink cartridges and Hall's lack of knowledge of the disabling devices was reasonable based upon HP's omission of the remote disabling devices and misrepresentation that the Instant Ink program could be cancelled at any time for any reason when, in reality, it was HP's undisclosed intent to disable Hall's printer and cartridges if he cancelled the Instant Ink program even though the printer and cartridges were paid for in full.

45.    As a result of HP's omissions and misrepresentations, Hall was required to re-enroll in the Instant Ink program and his bank account was debited for additional cartridges and costs associated with his re-enrollment in the program.

### THIRD CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, et seq.)

### (On behalf of a Nationwide Class, or Alternatively, a California Class)

46.    Plaintiff hereby incorporates Paragraphs 1-45 as if set forth in full herein.

47.    HP violated Cal.Bus & Prof. Code section 17200, *et seq*. ("UCL") by engaging in unlawful, unfair, fraudulent and deceptive business acts and practices including, without limitation:

a. Installing a remote disabling device in Hall's printer without his knowledge;

- 10 -

b. Disabling Hall's printer when he cancelled his Instant Ink subscription;

c. Installing remote disabling devices in Hall's ink cartridges without his knowledge;

d. Disabling Hall's ink cartridges even though the cartridges were paid for in full; and

e. Requiring Hall to re-enroll in the Instant Ink program to reactivate his printer and/or cartridges.

48.    As a result of HP's conduct, Hall is entitled to restitution of all monies associated with his enrollment and re-enrollment in HP's Instant Ink program.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.    For an order certifying that the action may be maintained as a Class Action as defined herein and appointing Plaintiff and his counsel of record to represent the defined Class;

2.    For a preliminary and/or permanent injunction prohibiting HP from disabling HP printers and/or ink cartridges based on the Instant Ink subscriber's cancellation of their HP Instant Ink subscription;

3.    For damages;

4.    For restitution;

5.    For punitive damages;

6.    For reasonable attorney's fees and costs;

7.    For prejudgment interest to the extent allowed by law;

8.    For costs of suit incurred herein; and

9.    For such other and further relief as the Court deems appropriate.

Dated: November 15, 2024          KELLY, TROTTER & FRANZEN

By:‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
          MICHAEL J. TROTTER
          Attorneys for Plaintiff Donald Hall

- 11 -

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all claims so triable.

Dated:  Novemeber 15, 2024      KELLY, TROTTER & FRANZEN

By:_____
      Michael J. Trotter, Esq.
      Attorneys for Plaintiff Donald Hall

COMPLAINT (CLASS ACTION)